EIKENBERRY et v McFALL, et

Ohio Appeals, 2nd Dist, Preble Co

No 103.   Decided Jan 14, 1941

Leo Burke, Cincinnati; John P. Burke; S. P. Foos, Eaton, for plaintiffs-appellants.

John V. Dye, Eaton; Harry G. King, Eaton; Emerson Young, for defendants-appellees.

## OPINION

By BARNES, J.

The above entitled cause is now being determined as an error proceeding by reason of plaintiffs' appeal on questions of law from the judgment of the Court of Common Pleas of Preble County, Ohio.

First, we are presented with a motion filed by counsel for the defendants-appellees, asking that appeal proceedings be dismissed on the claimed ground that no bill of exceptions has been filed by appellants in our court.

We have reason to believe that it very frequently happens that bills of exceptions are not properly filed in our court due to the fact that counsel and Clerks of Court are not familiar with the requisite steps to be taken. The following is the technique to be used in filing bills of exceptions:

Counsel for appellant procures from the Court Reporter, or prepares himself, in narrative form, a bill of exceptions and files the same with the Clerk of the Common Pleas Court. Thereafter, the Clerk notifies opposite counsel that such bill of exceptions is on file and the statutory time is given to file objections. At the expiration of this time, the Clerk presents the bill to the trial court, and thereafter the trial court has a statutory time within which to correct, allow and return such bill to the Clerk of the Common Pleas Court. Thereafter, counsel for appellant should file praecipe with the Clerk, requesting that the approved bill be filed with the Court of Appeals. It is probable that verbal notice when complied with requesting such filing in the Court of Appeals, would be sufficient.

In the instant case there is no question that a bill of exceptions was prepared by the Court Reporter, delivered to counsel for appellant, filed with the Clerk of the Common Pleas Court, the necessary steps taken through which it was finally allowed by the Common Pleas Court and returned to the Clerk's office by such court on June 17, 1940.

It is a controversial question whether or not the bill of exceptions was filed in our court within the fifty days required under Rule VII of our Rules of Court. It is conclusively shown through the Court of Appeals' Appearance Docket and otherwise, that the Clerk of Courts did mark the bill of exceptions "filed" on such docket on June 17, 1940.

It is the claim of counsel for appellants that this was done at their instance, in their presence and on oral request made to the Clerk. The entry of such filing was erased by the Deputy County Clerk, and claim is made, supported by affidavit, that when such bill was marked "filed" on the Court of Appeals' Appearance Docket, he was not aware of the rule that such filing could only be upon request of appellant or his counsel, and that upon being informed of this rule on the day following, by counsel for appellee, he erased it but not so completely but that it is plainly discernible.

Affidavits are filed pro and con, which present a very difficult factual question for determination.

With considerable doubt as to the correctness of our conclusion, we have concluded to overrule the motion to dismiss and consider the case on the merits. It might be correct to state that we are consciously or unconsciously moved in this holding by reason of the fact that on consideration on the merits we find it necessary to affirm the judgment of the lower court.

Under any situation we would not grant plaintiffs' motion to dismiss, but the proper procedure would be to affirm the judgment where the claimed errors are only manifest through a bill of exceptions and such a bill of exceptions can not be considered.

As heretofore indicated, we are considering the bill of exceptions as filed under date of June 17, 1940.

The action is one to contest the last will and testament of Frank Eikenberry, a former resident of Camden, Preble County, Ohio, whose death occurred on the 12th day of November, 1938, at the age of seventy-two years. Mr. Eikenberry had been a successful and prosperous business man, engaged

in the furniture business in Camden for a number of years, and at the time of his death had accumulated an estate of considerable size. The decedent was married early in life and celebrated their fiftieth anniversary early in the year of his death. They had no children. Up until the date of the death of his wife in April, 1938, the family consisted entirely of decedent and his wife. Following the death of his wife, Mr. Eikenberry became seriously sick, making it necessary, on May 11, 1938, to take him to the Mercy Hospital, at Hamilton, Ohio, where he remained until the 27th day of May, 1938, when he was taken to the Cincinnati Sanitorium, at College Hill, Cincinnati, Ohio. While Mr. Eikenberry was confined at the Mercy Hospital at Hamilton, Ohio, according to credible testimony of all witnesses, the decedent became mentally sick to the point that he was described as being of unsound mind and insane, and on the 16th day of June, 1938, after he had been taken to the Cincinnati Sanitorium, at College Hill, a guardian was appointed for Mr. Eikenberry by the Probate Court of Preble County, Ohio, upon the application of Mr. Frank Shuey, his personal attorney and business associate.

Mr. Eikenberry was released from the Sanitorium at College Hill on or about the 9th day of July, 1938, and on the 10th day of September, 1938, he personally made application in the Probate Court for termination of the guardianship. Following the necessary statutory proceedings, a hearing was had, and on September 14, 1938, the Probate Court terminated such guardianship.

On the 27th day of September, 1938, Mr. Frank Eikenberry, at his home in the village of Camden, Ohio, executed the alleged will in controversy through contest proceedings in the instant case.

The case was tried in the Common Pleas Court. In the first trial the jury disagreed and were discharged. In the second trial, the jury, on a vote of nine, returned a verdict sustaining the will. Motion for new trial was filed, overruled and judgment entered on the verdict.

This is the final order through which the notice of appeal lodges the case in our court.

The assignment of errors is set out under eight separately numbered specifications. Only three of such specifications are argued specifically in appellants' brief, although they do say in a general way that the other claimed errors are relied upon.

We will now take up the claimed errors in the same order as presented in the briefs of counsel:

"**Specification No. 3.** The court erred in the rejection of testimony offered by the appellants, to the rejection of which appellants duly excepted at the time."

The testimony rejected which counsel for appellants claim was prejudicially erroneous were the hospital records of the Mercy Hospital, of Hamilton, Ohio, and the Middletown Hospital, of Middletown, Ohio. We have heretofore referred to the decedent's being confined in Mercy Hospital between the dates of May 11 and 27, 1938. Decedent entered the Middletown Hospital October 16, 1938, and remained therein until the time of his death on November 12, 1938.

The entire files of the hospital records were properly identified and offered in evidence as single files for each hospital, and not separately page for page or otherwise. The custodians of the files and records of the respective institutions were called as witnesses, and after being duly qualified, testified that the records were made under their respective supervisions and effectively qualified themselves to meet the requirements of §12102-23 GC. This section and others immediately preceding and following, are of very recent origin, becoming effective September 6, 1939. Prior to the enactment of the above sections, there could be no question that the hospital records in the proffered form, would not have been admissible in evidence. The trial court held that the proffer fully complied with the requisites of the section, but refused to admit the evidence on

the ground that the statements therein were privileged and not admissible, as provided under §11494 GC.

Section 12102-23 GC above referred to, reads as follows:

"Sec. 12102-23. What records are competent evidence. A record of an act, condition or event, shall, in so far as relevant, be competent evidence if the custodian or the person who made such record or under whose supervision such record was made testifies to its identity and the method of its preparation, and if it was made in the regular course of business, at or near the time of the act, condition or event, and if, in the opinion of the court, the sources of information, method and time of preparation were such as to justify its admission."

Counsel in their briefs argue pro and con on the correctness of the court's ruling that the files were rejected on the ground of privilege.

Sec. 11494 GC is the general privilege statute, and its provisions are so well known that it will not be necessary to quote therefrom.

We are in accord with the reasoning of the trial court that §11494 GC is still in effect and is not inferentially repealed by §12102-23 GC. Neither can this new section, 12102-23 GC be considered as an exception to the general provisions of §11494 GC. The entire purpose of the enactment of §12102-23, and kindred sections, was the elimination of the nuisance rule which frequently required a parade of innumerable witnesses to properly identify records where entries were made by different persons. The enactment of the above quoted section obviates a calling of so many witnesses and permits the introduction in evidence of the records, where relevant, through the identifying testimony of the person under whose supervision such records were made. We can not bring ourselves to the conclusion that the Legislature intended in any way to repeal or qualify the provisions of privilege §11494 GC.

It is inconceivable and obnoxious to any rule of reason that a physician, for instance, might make up a record relative to his patient then in the hospital, and permit such record of the physician to be introduced in evidence without any right of cross-examination of such physician, and yet hold that this same physician under the provisions of §11494 GC would not be permitted to testify because of privilege.

An examination of these proffered files will further disclose that many, many pages have no bearing upon the issues in the case being tried, and hence were not relevant under any circumstances. This would be an additional reason why the ruling of the trial court would be proper and not prejudicial. Where an entire file was offered in evidence some parts of which are not relevant or competent, it will not be held prejudicial error where the court sustains objections to the entire file, even though some parts of it offered separately might be competent.

Furthermore, we have examined these files with great care, and even if we should disagree with the ruling and reasoning of the trial court, we would still say that no prejudicial error was committed, for the reason that pertinent parts of the file had such a remote bearing that it may not be said that a presentation of such evidence by the court and consideration by the jury would have affected the verdict.

Referring to the file of the Mercy Hospital, of Hamilton, Ohio, and searching for any evidence which might have a bearing on the soundness or unsoundness of mind of Mr. Eikenberry at the time he was in that hospital, it will be found that such evidence is so negligible when considered in connection with the very direct and positive testimony of a great number of witnesses connected with the hospital and

having the means of personal observation as to the mental condition of Mr. Eikenberry as to present no prejudicial error.

This testimony of witnesses presented in connection with that of the Probate Judge of Preble County, together with his records showing the appointment of a guardian, should leave no room for doubt as to the unsoundness of mind of Mr. Eikenberry during the period that he was in the Mercy Hospital, and from there transferred to the Cincinnati Sanitorium, at College Hill, Cincinnati.

We do not understand that counsel for appellee are seriously contending that during this period of time Mr. Eikenberry was at all times of sound mind. We understand that the most they claim is that at times he had moments of more or less duration when he was rational and we further think that counsel for appellants concede this, while strenuously urging that there was at all times a mental unsoundness, although apparently rational moments.

It is the claim of counsel for appellees that Mr. Eikenberry had a full recovery; while counsel for appellants claim otherwise.

Referring to the file from the Middletown Hospital, the only possible pertinent portion thereof relates to the attending physician's reports. As heretofore stated, we think these reports would be privileged. As far as we are able to find, the only physician's report in this file is that of Dr. W. H. Roehll. The only substance in Dr. Roehll's report which might be said to be pertinent would be the sheets under the head of personal history and physical examination.

No reference in either of these is made to any mental condition. They do refer to arterio sclerosis, hypertension, peripheral vascular arterio sclerosis of both feet, intermittent claudication.

Dr. Roehll was called as a witness and testified that during the time that Mr. Eikenberry was in the hospital he was of sound mind.

We find no prejudicial error in the the court's exclusion as evidence of the hospital records of the two hospitals.

The second claimed error discussed is set out in the Eighth Assignment of Error, as follows:

"8. Appellants were prevented from having a fair trial by reason of misconduct of a juror in that one of the jurors when questioned, failed to disclose that he was then represented in a pending action by one of counsel for appellees."

This objection refers to Juror Eckhardt. This juror, after being sworn and in examination on his voir dire, answered in part as follows:

"Q. Do you know any of the parties in this case?
A. No.
Q. Or any of the attorneys?
A. One.
Q. Which one? A. Mr. Dye.
Q. John Dye; and in what connection do you know Mr. Dye?
A. He did business for me.
Q. He has represented you?
A. Yes.
Q. Does he have any matters now in his hands for you?
A. No, sir.
Q. Do you consider Mr. Dye your attorney?
A. Yes, sir.
Q. If you had any business requiring a lawyer, you would consult Mr. Dye, I suppose?
A. Yes, sir.
Q. Well, he is a good lawyer; would that connection with Mr. Dye embarrass you in voting against him if you found the facts were that Frank Eikenberry was not of sound mind at the time the will was executed?
A. No, sir."

After the case had been submitted to the jury and before the verdict was returned, counsel for plaintiff claim to have discovered some facts, the investigation of which following the verdict, led them to conclude that Juror Eck-

hardt had not honestly answered all questions put to him touching his qualifications to act as a juror. Affidavits in support of this claimed ground for new trial were presented, as were counter-affidavits. It was conclusively shown that at the time of the inquiry Mr. Eckhardt was a trustee for the West Elkton Circuit of the United Brethren Church, an unincorporated religious society, and that in connection with four other trustees had begun a proceeding under and by virtue of §10051 GC in the Court of Common Pleas of Preble County, Ohio, praying for authority to sell certain real estate belonging to said church, and that such proceeding was still pending at the time Juror Eckhardt was being interrogated as to his qualifications to act as a juror.

Sec. 11419-51 GC, in part, reads as follows:

"Sec. 11419-51. Causes for Challenge of Persons Called as Jurors. The following shall be good cause for challenge to any person called as a juror for the trial of a cause: * * *

8. That he or his spouse, is a party to another action then pending in any court in which an attorney in the cause then on trial is an attorney, either for or against him."

It will be noted in paragraph 8 of said section that the ground of challenge is that the prospective juror is a party to another action.

Sec. 11237 GC, defines action as follows:

"Sec. 11237. Action defined. An action is an ordinary proceeding in a court of justice, involving process, pleading and ending in a judgment or decree, by which a party prosecutes another for the redress of a legal wrong, enforcement of a legal right, or the punishment of a public offense."

Under this statutory definition of the term action, it appears at once that the pending proceeding in which Juror Eckhardt was interested as trustee, was not an action. The Court of Appeals

of Hamilton County, Ohio, had under consideration this question as raised under the provisions of said §10051 GC and held that such proceedings were not an action. **Welansky, Trustee v The Ancient Polen Congregation et, 12 Oh Ap 301.**

Sec. 10051 provides in detail the requisite steps to be taken to sell * * * real estate by a religious society or association * * *. Among other things, it provides that when the church body desires to sell its property, the trustees may file a petition for such sale. The following section provides for notice to be published in some newspaper of general circulation in the county for four consecutive weeks. Thereafter the court may authorize the trustees or other officers to sell such real estate in accordance with the prayer of the petition, and upon such terms as the court deems reasonable.

Under the existing facts it is apparent that plaintiff was not entitled to challenge Juror Eckhardt for cause. It is urged by counsel for plaintiff that the failure of this juror to correctly answer the question put to him would at least deprive them of the right of peremptory challenge, and, further, that they had not exhausted their right to peremptory challenge. One of the questions asked of Juror Eckhardt and his answer were as follows:

"Q. Does he have any matters now in hand for you?
A. No, sir."

This question, of course, is broader than the language of paragraph 8 above quoted, and while as a basis for challenge for cause, it would be necessary to limit the inquiry and answer to "an action"; but the rule is well recognized that courts may properly permit the inquiry beyond the grounds enumerated for challenge for cause in order to allow counsel to determine in his own mind as to whether or not he would desire to challenge peremptorily.

We can only guess at what Juror Eckhardt had in mind when he did not

**532**

mention the fact that Mr. Dye was attorney for the trustees, of which he was one, in the application to sell church property. It is entirely possible that he did not consider this church proceeding as important. without any intention or purpose to conceal. Technically, it might be correctly stated that Juror Eckhardt did not have any matter in the hands of Mr. Dye for himself. We think that unfortunately the juror for whatever reason, failed to answer and explain this church proceeding and the employment of Mr. Dye in connection therewith. We feel further that it was a situation which should have prompted counsel sitting at the trial table to mention the fact. However, under the state ▐ of the record, we are unable to find any prejudicial error. The very clear and positive statements of this juror that Mr. Dye did business for him, that he considered him his attorney, and if he had any business requiring a lawyer he would consult Mr. Dye, presented to plaintiff and his counsel a relationship between the juror and Mr. Dye that nothing could have been added as a ground for peremptory challenge had the information been given relative to the church proceeding.

We find no prejudicial error under Specification No. 8.

The third ground of complaint is under assignment No. 4, as follows:

"The court erred in its general charge to the jury, to which appellants duly excepted."

Complaint to the charge is made under three separate matters. For convenience we will designate them as A, B and C.

Exception is taken to the charge of the court which appears on page 304 of the bill of exceptions, wherein the court makes the following observation to the jury:

"A"

"It has been admitted, or at least not contested, that the requisite for-

malities of law relative execution and witnessing the paper writing were properly carried out and further, that the deceased was of full age."

Particular stress is placed upon the use of the word "properly". It is argued .that this is misleading since plaintiff was contending that the execution was improper for the reason that the execution of the will was the result of undue influence and mental incapacity.

We do not feel that the jury would have any difficulty in understanding: that the court was seeking to narrow the issues as far as possible, and that the above statement conveyed no other meaning than that the formal requirements of law were complied with as to signing and witnessing.

This is necessarily true when taken in connection with the charge in its entirety, where the court very fully instructed the jury on the issue of undue influence and mental capacity. Furthermore, there is no complaint that the above is an incorrect statement of the law, but rather that in its form it might have been misunderstood by the jury. Under such a situation, the duty would rest on counsel for plaintiff whenever he felt that there was the possibility of an instruction being incomplete .or not understandable, to request the court to amplify.

We find no error in the giving of the part of the charge which we identify under letter A.

Under B, on page 305, the court used the following language:

"The law provides that an entry terminating a guardianship shall have the force and effect of a determination by the court that such person is restored to sanity. Further, there is no requirement of law that there are any others than the person acting as guardian need have notice of an application for termination of the guardianship."

Objection is made to both the first and second sentences of the above quotation. We are unable to see that either is well grounded. Both the first and second sentences state in substance the provisions of §10507-61 GC. Counsel urge that notwithstanding the force and effect of a determination by the Probate Court, nevertheless there still remains for the jury a duty and obligation to determine whether or not the decedent was capable of making a will. We agree with this observation, and think that the court did so instruct.

On the question of notice, we think the court was warranted in so instructing the jury in view of the fact that counsel for plaintiff had made repeated inquiries on the question of notice when interrogating witnesses.

We find no error under instruction which we have designated as B.

Under our heading C, complaint is made that the court improperly charged the jury as appears on page 307, as follows:

"C"

"It must appear that there was such influence and restraint as caused the execution of the will by the testator against his own desires in the matter. It must appear by a preponderance of the evidence that such undue influence and restraint was practiced with reference to the paper in question and it must have affected or brought about the provisions of the will, or some of them."

In the quoted portion counsel have failed to state that which immediately precedes. The preceding paragraph very definitely shows that the Court was limiting what he was saying to an instruction on undue influence. In no sense did the Court convey to the jury the idea that it was necessary for plaintiff to show undue influence, but was only defining what was meant by the term.

We find no error under this part of the charge.

These are the only claimed errors specifically discussed by counsel for appellants. In their brief the following statement is made under the heading "Conclusion":

"**Conclusion.** There were, we feel, other errors committed during the trial of sufficient importance to cause a reversal by this court and while not waiving them, we do not propose to mention them at this time."

We refer to the other errors set out in the assignment of errors in the same general way. We have examined the claimed errors but find nothing prejudicial.

The judgment of the trial court will be affirmed, and costs adjudged against appellant.

Entry may be drawn accordingly.

HORNBECK, PJ. & GEIGER, J., concur.

### APPLICATION FOR REHEARING

No 103.   Decided Jan 24, 1941

BY THE COURT:

The above entitled cause is now being determined on plaintiff-appellant's application for a rehearing.

The only ground of application requiring attention is that wherein appellants complain that the court did not pass upon their motion asking for an order requiring the clerk of the court to correct the docket showing that a bill of exceptions was filed on June 17, 1940.

It is probably true that in our original opinion we did not expressly state that the application to correct the docket was sustained, yet we did inferentially so do when we stated that we would consider the bill of exceptions as filed under date of June 17, 1940.

We also stated that we were in considerable doubt upon this question and still adhere to that conclusion. However, in the interest of permitting plaintiff to save his record in the Common

Pleas Court, and in line with the inferences to be drawn from our original opinion, authorize the entry to provide that the clerk make the entry in his docket that the bill of exceptions was filed in our court on June 17, 1940. The Clerk may also include in his entry that the same is made on the order of the Court of Appeals.

We find nothing in the application for rehearing that was not considered before original opinion was released and, therefore, in all other particulars the applications will be denied.

HORNBECK, PJ., GEIGER & BARNES, JJ., concur.